**Affirmed and Memorandum Opinion filed August 29, 2024.**



In The

# Fourteenth Court of Appeals

### NO. 14-23-00396-CR

**SHELDON WILFRED MAGEE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 434th Judicial District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 19-DCR-088590**

## MEMORANDUM OPINION

Appellant Sheldon Wilfred Magee appeals his conviction for murder. In five issues he challenges the admission of text messages and the omission of an instruction to the jury on voluntariness of consent to search. Concluding appellant's consent to search was voluntary, the text messages were admissible, and the trial court did not err in refusing the requested instruction, we affirm.

BACKGROUND

On August 11, 2019, appellant shot and killed his girlfriend Kiva Herrera in the parking lot of the Courtyard by Marriott hotel in Sugar Land, Texas. The shooting was witnessed by Catherine West, the assistant general manager of the hotel, and two housekeepers at the hotel, Sharnetta Batiste and Shawanda Walker.

Catherine West testified that on August 11, 2019, the day of the offense, she was notified by a guest that there appeared to be an altercation in the hotel parking lot. When West went out to investigate, she saw a man and a woman in the parking lot. The man was sitting in the passenger side of a white four-door car with the door open. The woman was sitting on the ground in the parking lot facing the hotel.

Concerned by the couple's demeanor West called 9-1-1. West testified that the woman appeared scared as she was crying and shaking. West heard the woman say, "Please don't do this, Sheldon." While West was on the phone with the 9-1-1 operator she heard a gunshot. When West heard the shot she turned around and saw appellant holding a gun.

Sharnetta Batiste testified that she was working on the second floor of the hotel, looked out the window, and saw a "commotion outside in the parking lot." Batiste saw appellant sitting in the passenger seat of a car and the complainant sitting on the ground. Appellant was holding the complainant by her shirt. The complainant was trying to get away from appellant but was unable to get very far. Batiste saw appellant retrieve a gun from the car. Batiste then saw appellant shoot the complainant. Appellant then "politely walked around her and the car and went to the back side of the building."

Shawanda Walker was also working as a housekeeper at the hotel on August 11, 2019. Walker was cleaning on the second floor and smelled popcorn. Walker

discovered her colleague Batiste popping popcorn and looked out of the window toward the parking lot. Walker also saw appellant sitting in the car and the complainant sitting on the ground. Walker called Batiste to the window and they both watched appellant shoot the complainant.

Officer Eric Dixon of the Sugar Land Police Department testified that he and his trainee, Officer Fisher, received the dispatch from West's 9-1-1 call. As Dixon arrived at the hotel, he saw appellant holding a handgun behind his back standing over the complainant, who had been shot and was lying on the ground. When appellant saw the officers approach, he ran away, and as he was running he turned and pointed the handgun at Dixon. Both appellant and Dixon shot at about the same time. Neither shot hit anyone. Dixon and Fisher took cover behind parked cars and ordered appellant to drop his weapon. Rather than drop the weapon appellant held the gun to his head and fired it. After appellant fired the gun, he collapsed as if he had been shot; Dixon and Fisher thought appellant had shot himself. After detaining appellant, the officers determined that he was unharmed.

After appellant's arrest Officer Gamble read appellant his *Miranda*[1] rights and appellant agreed to waive those rights and speak with Gamble. Gamble asked appellant if he went to the Courtyard by Marriott hotel with the intent to kill the complainant. Appellant responded, "Yeah."

Officer Gamble testified that he retrieved a cell phone from the car that was near the complainant's body at the scene. The phone in the car belonged to appellant; Gamble also retrieved the complainant's phone. Gamble turned over the phones to Officer Matthew Levan for forensic extraction. Gamble went to the jail August 14, 2019 to obtain consent to search appellant's phone. Gamble obtained a signed,

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

written consent from appellant to search his phone. Appellant voluntarily gave Gamble the pass code to his phone and Gamble used the pass code in front of appellant.

Officer Levan of the Sugar Land Police Department extracted data from three phones: appellant's, the complainant's, and a third party whose car was the one being used by appellant on the day of the offense. During Levan's testimony the trial court admitted exhibits containing images of text messages from the three phones. When State's Exhibit 37, containing text messages from appellant's phone was introduced, appellant objected to its admission on grounds that the exhibit contained hearsay, was not sponsored by the "proper custodian of record," violated the Confrontation Clause of the United States and Texas Constitutions, and violated "due process." Appellant further objected that the probative value of the evidence was exceeded by its prejudicial effect. Appellant further renewed his earlier objections to the search of his phone asserting that the search was conducted without consent and without a valid warrant. Appellant requested and was granted a running objection to the document containing information extracted from appellant's phone.

Appellant's phone contained photographs of the parking lot of the hotel where the complainant was shot. Those photos were taken the day before the offense. Also found on the phone was an internet search for the complainant's phone. Another search was done for the Courtyard by Marriott in Sugar Land. On the morning of the offense appellant sent a text message to the complainant saying, "Meet me at church, please." Appellant admitted on cross-examination he lied about being at church so the complainant would not know he was at the hotel where she was staying.

Levan also testified about text messages found on the complainant's phone. He testified that appellant and the complainant had a disagreement about finances, among other disagreements. On August 6, five days before the offense, the

complainant sent a text to appellant telling him, "This relationship is 100 percent over." The next day, August 7, the complainant sent a text to appellant telling him she was planning to call the police. This text was sent minutes before an officer was dispatched regarding the incident outside the Extended-Stay hotel where the complainant had been staying to avoid appellant.[2]

Over the course of the next day the complainant and the victim sent long text messages to each other in which the complainant explained why she was breaking up with appellant and appellant tried to reconcile. The day before the offense, the complainant sent the following text message to appellant:

> God has revealed so much to me. He has also strengthened me. Strengthened me to know my worth. Strengthened me to walk away and never return to an abusive person such as yourself. You're a 45-year-old man, and your choices in life is to now stalk me. Where do you think that will end up for you?
>
> I'm taking every step with the law legally to protect myself, and eventually justice will be served. You going to risk your freedom because you can't grasp the fact I don't want anything to do with you. You going to risk your freedom because I ended the relationship. That shows exactly your mental state. And I've been saying for a long time that something is wrong with you
>
> I have three complaints with Sugar Land Police Department against you. I'm going back today to inform them you again — yet again you are stalking and following me.

Appellant responded:

> Where — where I'm stalking you at? What is you talking about? I'm lost right now.

---

[2] Officer Neil Kim of the Sugar Land Police Department responded to a 9-1-1 disturbance call made by the complainant on August 7, 2024, four days before the murder. The complainant was at an Extended-Stay hotel and appeared upset, nervous, and scared. The complainant told Kim that appellant, her boyfriend, was in a parked car in the parking lot. Kim determined that no criminal offense had occurred. After the encounter with appellant the complainant moved to the Courtyard by Marriott hotel where she was killed.

Stalking you. Where the fuck you at for me to stalk you?

Appellant's response was sent after appellant had taken pictures of the Courtyard by Marriott hotel where the complainant was staying indicating that appellant knew where the complainant was but wanted her to think he did not.

Throughout the day the complainant and appellant continued to communicate via text messages with the complainant asking that appellant leave her alone and appellant continuing to try to reconcile, including calling the complainant's phone at least 20 times. The complainant eventually blocked appellant's phone number. The complainant did not receive the text message containing a picture of her location.

After the State rested appellant testified that he and the complainant were together for two years before he killed her. On August 10, the day before the offense, appellant traded cars with a friend so that the complainant would not recognize his car when he followed her to the hotel.

On August 11, appellant drove to the hotel and waited in the parking lot for the complainant to come outside. Appellant's friend's car contained a firearm. While waiting for the complainant appellant was thinking he was "going to fix this problem I have with what's going on with my life." Appellant explained that he planned to talk the complainant into returning home or he planned to harm himself. Appellant saw the complainant leave and when she returned, he stepped out of his car and confronted her. Appellant admitted pointing the gun at the complainant knowing that the gun was a deadly weapon. Appellant pointed the gun at his own head and threatened to kill himself. The complainant pleaded with appellant not to shoot himself. Appellant testified that when the police began to arrive, he "jumped up and panicked" and "heard the gun go off." Appellant denied that he intentionally shot the complainant. Appellant also denied shooting at the responding police officers.

When appellant was taken before a magistrate, he expressed his desire to have an attorney appointed to represent him. Sugar Land police placed appellant in a padded cell because he told them he wanted to kill himself. Appellant testified that when Officer Gamble came to his cell and asked for appellant's phone pass code appellant told Gamble the pass code. Appellant admitted signing the consent form for the search of his phone but asserted that Gamble did not read the form to him, and appellant did not read it before signing.

Appellant admitted that Officer Gamble read his *Miranda* warnings on the day of appellant's arrest and that he understood those warnings. Appellant never told Gamble he did not want to talk with him. Appellant admitted giving Gamble his phone pass code and signing the consent form to search his phone.

The jury found appellant guilty of murder and did not find that appellant committed the offense under the immediate influence of sudden passion. The jury assessed punishment at fifty years in prison.

## ANALYSIS

In four issues appellant challenges the admission into evidence of text messages found on his phone and the complainant's phone on the grounds that (1) he was deprived of timely appointment of counsel; (2) the search warrant affidavit did not establish probable cause and appellant's consent to search was not voluntary; (3) the text messages were inadmissible hearsay and their admission violated the confrontation clause; and (4) appellant did not receive appropriate notice from the State regarding the content of the text messages. In another issue appellant alleges the trial court abused its discretion in omitting jury instructions on the voluntariness of his consent to search his phone.

7

**I.    The trial court did not abuse its discretion in denying appellant's motion to suppress the text messages found on his phone based on his Sixth Amendment right to counsel claim.**

In appellant's first issue he asserts he was deprived of timely appointment of counsel. Appellant's first two issues raise the distinction between assertion of the Fifth Amendment right to interrogation counsel and the Sixth Amendment right to trial counsel after the United States Supreme Court's decision in *Montejo v. Louisiana*, 556 U.S. 778 (2009). Under *Montejo*, the Fifth Amendment right to interrogation counsel is triggered by the *Miranda* warnings that police must give before beginning any custodial interrogation. As relevant to this case, the Sixth Amendment right to trial counsel is triggered by judicial arraignment. *Pecina v. State*, 361 S.W.3d 68, 71 (Tex. Crim. App. 2012). Both the Fifth and Sixth Amendment rights to counsel apply to post-magistration custodial interrogation, but each is invoked and waived in exactly the same manner—under the Fifth Amendment *Miranda* rules. *Id*.

The Sixth Amendment right to counsel attaches once the "adversary judicial process has been initiated," and it guarantees "a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." *Montejo*, 556 U.S. at 786. In *Michigan v. Jackson*, 475 U.S. 625, 636 (1986), the Supreme Court had held that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." The Supreme Court explicity overruled that rule in *Montejo*. *Montejo*, 556 U.S. at 792–96.

A Sixth Amendment request for an attorney at an arraignment or initial appearance is a "request for the guiding hand of counsel for all judicial criminal proceedings." *Pecina*, 361 S.W.3d at 78. If the defendant also wishes to invoke his Sixth Amendment right to counsel during the "critical stage" of post-arraignment

8

custodial interrogation, he may certainly do so, but he does so by invoking that right to counsel, pursuant to *Miranda,* when law enforcement or other state agents embark upon custodial interrogation. *Id*. (citing *Montejo*, 556 U.S. at 792–94 ("Under the *Miranda–Edwards–Minnick* line of cases (which is not in doubt), a defendant who does not want to speak to the police without counsel present need only say as much when he is first approached and given the *Miranda* warnings.")).

Here, appellant asserts had he "been timely given counsel, there is no way he would have answered [the officer's] questions or consented to the search of his phone." However, the Court of Criminal Appeals held that an individual may invoke both his Fifth Amendment and Sixth Amendment right to counsel for purposes of custodial interrogation when the police or other law-enforcement agents approach him and give him his *Miranda* warnings. *Pecina*, 361 S.W.3d at 78 ("Distilled to its essence, *Montejo* means that a defendant's invocation of his right to counsel at his Article 15.17 hearing says nothing about his possible invocation of his right to counsel during later police-initiated custodial interrogation."). Because appellant's invocation of his Sixth Amendment right to counsel does not affect any later response to custodial interrogation, we overrule appellant's first issue challenging his late-appointed counsel at a critical stage.

## II. The trial court did not abuse its discretion in denying the motion to suppress the text messages found on appellant's cell phone because appellant voluntarily consented to the search of his phone.

In appellant's second issue he asserts the trial court erred in admitting into evidence text messages and photographs from his phone because (1) the search warrant affidavit did not establish probable cause; and (2) his consent to search was not voluntary because he had requested counsel before giving consent and his *Miranda* rights were not re-read to him. Appellant asserts he was harmed by the untimely appointment of counsel because he signed the consent form to search his

phone without counsel. Appellant filed a motion to suppress evidence obtained as a result of the search of his cell phone. As grounds for suppression appellant asserted (1) the search warrant affidavit did not allege sufficient facts to establish probable cause; and (2) his consent to search the phone was involuntary and in violation of articles 38.21, 38.22, and 38.23 of the Code of Criminal Procedure.

## A.  Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Lerma v. State*, 543 S.W.3d 184, 189-90 (Tex. Crim. App. 2018). We review the trial court's factual findings for an abuse of discretion but review the trial court's application of the law to the facts de novo. *Id*. Our deferential review of the trial court's factual determinations also applies to the trial court's conclusions regarding mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012); *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We review mixed questions of law and fact that do not turn on credibility and demeanor, as well as purely legal questions, de novo. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011).

## B.  Search Warrant Affidavit

Officer Brian Dirks prepared the search warrant affidavit in this case. The probable cause affidavit supporting the search warrant stated:

> ln my training and experience, suspects communicate with witnesses, victims, or co-conspirators via phone calls, text messages, emails, and social network posts. These communications often contain direct and indirect statements about crimes. Furthermore, Affiant knows that communications rarely explicitly mention an intent to commit a crime. Instead, they often allude to such an intent: "gunna go hustle" for instance may be a declaration of an intent to commit a theft crime, but without context it is meaningless. ln my training and experience, individuals often use digital devices and cellular devices to post

messages to others on social networking applications. ln my training and experience, it is possible for cellular phone users to use a variety of messaging platforms including SMS, MMS, iChat, WhatsApp, call logs, and others.

The remainder of the affidavit contains nothing about a cell phone being used before, during, or after the charged offense. The only mention of the cell phone was that it was found in the car where appellant was sitting before he shot the complainant.

Under the Fourth Amendment, law enforcement may not embark on "a general, evidence-gathering search" of a cell phone for personal information. *See State v. Granville*, 423 S.W.3d 399, 412 (Tex. Crim. App. 2014). To search a person's phone after a lawful arrest, a peace officer must submit an application for a warrant to a magistrate. Tex. Code Crim. Proc. art. 18.0215(a). The application must "state the facts and circumstances that provide the applicant with probable cause to believe that: (A) criminal activity has been, is, or will be committed; and (B) searching the telephone or device is likely to produce evidence in the investigation of the criminal activity described in Paragraph (A)." *Id*. art. 18.0215(c)(5); *see also State v. Baldwin*, 664 S.W.3d 122, 131 (Tex. Crim. App. 2022). As this court has also stated, an affidavit offered in support of a warrant to search cell phone contents must usually include facts that a cell phone was used during the crime or shortly before or after. *Diaz v. State*, 604 S.W.3d 595, 603 (Tex. App.—Houston [14th Dist.] 2020), *aff'd*, 632 S.W.3d 889 (Tex. Crim. App. 2021) (citing *Walker v. State*, 494 S.W.3d 905, 908–09 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *Humaran v. State*, 478 S.W.3d 887, 893–94 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd)).

The Court of Criminal Appeals held that generic, boilerplate language about cell phone use among criminals is not alone sufficient to establish probable cause to search a phone. *Baldwin*, 664 S.W.3d at 134. The court explained:

11

Instead, specific facts connecting the items to be searched to the alleged offense are required for the magistrate to reasonably determine probable cause. To hold otherwise would condone the search of a phone merely because a person is suspected to have committed a crime with another person. Put another way, all parties suspected of participating in an offense would be subject to having their cell phones searched, not because they used their phones to commit the crime, but merely because they owned cell phones.

*Id.*

In *Baldwin*, the court held that an insufficient factual nexus existed to search the suspect's phone when the affidavit supporting the search warrant set forth merely the officer's generalized belief, based on his experience and training, that suspects plan crimes using their phones.

Considering the four corners of the search warrant affidavit in this case, we conclude the affidavit does not contain sufficient particularized facts to have allowed the magistrate to determine probable cause for a warrant to search appellant's phone because the affidavit presents no factual nexus between the phone and the murder. *See Baldwin*, 664 S.W.3d at 134.

While we conclude the trial court erred in denying appellant's motion to suppress on the grounds that the search warrant affidavit supported probable cause, that does not end our inquiry. Appellant signed a form consenting to the search of his phone, and admitted at trial that he signed the form. We turn to appellant's allegation that his consent was involuntary.

## C.    Consent to Search

Appellant contends his consent to search the phone was obtained involuntarily because he had requested appointment of counsel, but none had been appointed, and his *Miranda* rights were not re-read to him.

After jury selection but before the guilt/innocence phase of trial began, the trial court held a hearing on appellant's motion to suppress. Gamble testified on the issue of appellant's consent to the search of his phone. Gamble spoke with appellant on the day of the offense. Before speaking with appellant Gamble read appellant his *Miranda* rights and ensured that he understood those rights. Appellant expressed his understanding and did not request counsel at that time. At 9:00 a.m. on August 13, 2019, appellant was brought before a magistrate and signed a form noting that he wanted appointed counsel.

The next day, August 14, 2019, Gamble went to the jail to attempt to obtain consent from appellant to search his cell phone. When Gamble met with appellant, he did not appear to be under the influence of substances, was alert, and oriented as to where he was and what was happening. Gamble explained to appellant that it would be beneficial if law enforcement could have the pass code to his phone. Appellant provided the pass code and Gamble unlocked appellant's phone in his presence. At appellant's request Gamble spoke to jail personnel to ensure that appellant could take a shower. Gamble estimated his interaction with appellant lasted less than five minutes. Gamble explained that appellant was not being interrogated. Appellant did not invoke his right to counsel or his right to remain silent during his conversation with Gamble.

Gamble obtained a signed consent form from appellant in which appellant voluntarily consented to the search of his phone. Gamble testified that he read the form to appellant and gave it to appellant so he could read it. Gamble ensured that appellant understood the form before he signed the voluntary consent form. The administrative judge later appointed counsel for appellant on August 19, 2019.

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the United States Supreme Court declared that the constitutional protection against compelled self-incrimination,

embodied in the Fifth and Fourteenth Amendments, requires that a "custodial interrogation" be preceded by advice to the accused that he has the right to remain silent as well as the right to assistance of counsel. If he requests an attorney, "the interrogation must cease" until one is present. *Id*. at 474. Appellant asserts that Gamble obtained his consent to search after he had affirmatively invoked his Sixth Amendment right to assistance of counsel and he was not afforded counsel at that time, and as such, the trial court committed error in denying his motion to suppress evidence discovered on appellant's phone.

A "custodial interrogation" is the linchpin to triggering *Miranda's* protections. Neither party disputes that appellant was "in custody" at the time he consented to the search. Instead, the relevant question here is whether his consent was obtained by reason of an unlawful "interrogation" after he requested an attorney.

"Interrogation" is defined as express questioning and "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). Consent to search is not an interrogation within the meaning of *Miranda* because the giving of consent is not a self-incriminating statement. *Jones v. State*, 7 S.W.3d 172, 175 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (citing *Smith v. Wainwright*, 581 F.2d 1149, 1152 (5th Cir.1978) ("[C]onsent to search is not an incriminating statement; it is not in itself evidence of a testimonial or communicative nature.")). Appellant's act of signing the consent form was not, in and of itself, an incriminating statement. The actions of the police in asking appellant for consent to search do not constitute interrogation under *Miranda*. *See Jones*, 7 S.W.3d at 175. Because appellant's consent to search was not an incriminating statement, he was not entitled to counsel before giving consent nor were police required to re-read his *Miranda* rights. Therefore, the trial court did not err in denying appellant's motion

14

to suppress on that ground. We turn to appellant's assertion that his consent was invalid for other reasons.

For consent to be valid, it must "'not be coerced, by explicit or implicit means, by implied threat or covert force.'" *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000) (quoting *Schneckloth v. Bustamante*, 412 U.S. 218, 228 (1973)). "[N]o one statement or action should automatically amount to coercion such that consent is involuntary." *Fienen v. State*, 390 S.W.3d 328, 333 (Tex. Crim. App. 2012). "The ultimate question is whether the suspect's will was overborne" by the officer's actions. *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997). The trial court examines the voluntariness of consent based on the "totality of the circumstances from the point of view of an objectively reasonable person, including words, actions, or circumstantial evidence." *Tucker v. State*, 369 S.W.3d 179, 185 (Tex. Crim. App. 2012); *see Creager*, 952 S.W.2d at 856. As applicable to the facts of this case, we consider the following factors in evaluating whether consent was voluntary: whether the accused was advised of his constitutional rights, whether the questioning was repetitive or prolonged, whether the accused was aware that he could decline to answer the questions, and what kind of psychological impact the questioning had on the accused. *Tucker*, 369 S.W.3d at 185. An officer's testimony that consent was voluntarily given can be sufficient evidence to prove the voluntariness of the consent. *See Martinez v. State*, 17 S.W.3d 677, 683 (Tex. Crim. App. 2000); *Kelly v. State*, 331 S.W.3d 541, 547 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

In considering the totality of the circumstances, the record shows that clear and convincing evidence supports the trial court's finding that appellant voluntarily consented to the search. On appeal appellant asserts his consent was obtained after he had asked for counsel, without *Miranda* warnings, without appellant being told

what was on the phone would be used against him, and without him being told he did not have to consent. To be sure, as discussed above, appellant had requested trial counsel and was entitled to counsel under the Sixth Amendment. The record reflects, however, that appellant admitted having received *Miranda* warnings before he consented to the search of his phone and did not assert his right to counsel under the Fifth Amendment or *Miranda* before consenting to the search.

Appellant admitted that Officer Gamble read his *Miranda* warnings on the day of appellant's arrest and that he understood those warnings. Appellant never told Gamble he did not want to talk with him. Appellant admitted giving Gamble his phone pass code and signing the consent form to search his phone. Appellant testified that when Officer Gamble came to his cell and asked for appellant's phone pass code appellant told Gamble the pass code. Appellant admitted signing the consent form for the search of his phone but asserted that Gamble did not read the form to him, and appellant did not read it before signing. As described by both Gamble and appellant, the questioning was not repetitive or prolonged. Appellant did not decline to answer Gamble's questions. Based on the foregoing, we conclude the trial court did not abuse its discretion in finding that clear and convincing evidence demonstrated appellant's voluntary consent to the search. We therefore overrule appellant's second issue.

## II.     The trial court did not abuse its discretion in admitting evidence of text messages from the complainant's phone.

At trial appellant objected to the introduction of text messages from the complainant's phone on the grounds they were hearsay, violated the Confrontation Clause, and appellant was not given notice pursuant to the Rules of Evidence. We first address appellant's hearsay and Confrontation Clause grounds. On appeal appellant challenges the trial court's rulings on his objections in issues three and

16

five.

In appellant's third issue, he contends the following text messages from the complainant to appellant were inadmissible hearsay offered for the truth of the matter asserted:

- You did something. You must be guilty.
- You threatened me for the last MF time.
- Keep telling somebody that you are going to end their life.
- I am not bluffing. You will send yourself to jail.
- You are a bully. Threatening my life.
- You'll knock me out.
- You will end my life.
- Telling me you will kill me.
- You threatening me.
- No longer taking your abuse.
- You are physically abusive.
- Not f'ing allowing you to abuse me.
- You're evil. Threatening, abuse, and scare me.
- You want to knock me out. Bullying me. Threatening me.
- Abusive, liar, cheat.
- Abusive, stalking me.
- I will call the police like I was instructed to do until they arrest you. Your P.O. is trying her best to get you violated.
- I sent the picture to your P.O.
- Abusive, stalking me. 3 complaints with SLPD. Going to contact SLPD about your stalking, following me.
- I saw you. I took a picture. I reported it.
- You called my phone 20 times. I reported that too.
- I have contacted your probation officer. I am heading to the D.A.

17

to get a P.O.

- You will send yourself to jail.
- Knock me out, end my life, kill me. T.R.O. is in place.
- Already been to DA's office and spoken to your P.O. Kathleen Lee, U.S.P.O.
- She is totally aware of you threatening me.
- No longer taking your abuse.
- You are physically abusive. I've contacted people I need to contact.
- U.S.P.O. no. - on my phone for 16 minutes this morning. She texted me her cell.
- Contact with Kathleen Lee.
- Lying about turning yourself in. I'm calling police right now.

## A. Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). A trial court abuses its discretion if the decision falls outside the zone of reasonable disagreement—that is, the ruling was so clearly wrong as to lie outside the zone within which reasonable people might disagree. *Id*. at 83. We may not substitute our own decision for that of the trial court. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018).

## B. Hearsay

In asserting that the above-quoted text messages were inadmissible, appellant's entire argument is as follows:

> Tex. C.C.P. Art. 38.36 makes the interactions between the defendant and the complainant relevant, but this is subject to the evidence being admissible under the rules of evidence. *Smith v. State*, 5 S.W.3d 673, 376–378 (Tex. Crim. App. 1999).

Construing appellant's brief liberally, we first address his objection at trial that the text messages were inadmissible hearsay. Article 38.36(a) states that, "In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense." Tex. Code Crim. Proc. 38.36(a). The nature of the relationship—such as whether the victim and the accused were friends, co-workers, married, estranged, separated, or divorcing—is clearly admissible as relevant under this article. *Garcia v. State*, 201 S.W.3d 695, 702 (Tex. Crim. App. 2006). Article 38.36, however, "in no way broadens or otherwise affects the rules of evidence which apply, or the way in which they apply in any given homicide case." *Fielder v. State*, 756 S.W.2d 309, 318 (Tex. Crim. App. 1988). While relevant under article 38.36, appellant objected that the complainant's text messages were inadmissible as hearsay.

Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Tex. R. Evid. 801(d). An out-of-court statement which is not offered to prove the truth of the matter asserted therein, but is offered for some other reason, is not hearsay. *Guidry v. State*, 9 S.W.3d 133, 152 (Tex. Crim. App. 1999). If the out-of-court statement is relevant only if the trier of fact believes that the statement was both truthful and accurate, then the statement is hearsay. *Coble v. State*, 330 S.W.3d 253, 290 n.101 (Tex. Crim. App. 2010). A statement is not hearsay if its relevance does not hinge on its truthfulness. *Johnson v. State*, 425 S.W.3d 344, 346 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

In this case the text messages from the complainant's phone were not admitted

for their truthfulness, i.e., the jury was not asked to determine whether appellant was stalking the complainant or whether she had reported appellant to his probation officer. The text messages were admitted into evidence to show appellant's state of mind with regard to his reaction to the complainant's messages. The messages were therefore admissible as non-hearsay because their relevance did not turn on their truthfulness.

### C.    Confrontation Clause

Appellant next contends the text messages from the complainant's phone violated his rights under the Confrontation Clause.

The Confrontation Clause of the Sixth Amendment guarantees accused persons the right to confront the witnesses against them. *See* U.S. Const. amend. VI; *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The United States Supreme Court has applied this rule to "testimonial" statements and held that such statements are inadmissible at trial unless the witness who made them either takes the stand to be cross-examined or is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 54 (2004).

The Court of Criminal Appeals has summarized three kinds of testimonial statements: (1) "ex parte in-court testimony or its functional equivalent," i.e., "pretrial statements that declarants would reasonably expect to be used prosecutorially;" (2) "extrajudicial statements contained in formalized testimonial materials," such as affidavits, depositions, or prior testimony; and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010).

"Testimonial" statements are typically solemn declarations made for the

purpose of establishing some fact. *See Russeau v. State*, 171 S.W.3d 871, 880 (Tex. Crim. App. 2005). The text messages in this case are informal, and their subject and method of communication weigh against a finding that they are testimonial statements. *See Crawford*, 541 U.S. at 51 (noting that testimonial statements are typically "formalized" materials that "were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" as opposed to informal text messages). Accordingly, the trial court did not err by overruling appellant's Confrontation Clause objection to the admission of the text messages. We overrule appellant's third issue.

### D.     Notice of Extraneous Bad Acts

In appellant's fifth issue he challenges admission of State's Exhibits 37 and 38, which were PowerPoint presentations of the text messages from appellant and the complainant's phones. Pursuant to Rule of Evidence 404(b), appellant requested notice of the State's intent to introduce evidence of "any other crimes, wrongs, or acts allegedly committed" by appellant. Approximately four months before trial, the State gave notice that it intended "to introduce in the case in chief evidence of other crimes, wrongs, or acts for relevant purposes, including but not limited to, proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident." The State listed extraneous offenses it intended to introduce including several prior convictions of appellant. The State further gave notice that it intended to introduce evidence that:

> 1.     Appellant was engaging in illegal drug activity and the complainant attempted to leave the relationship due to her belief that appellant was involved in illegal drug activity.
>
> 2.     From approximately 2005 through 2019 appellant engaged in a continuing course of conduct against at least one victim other than the complainant involving "dating violence."

21

3.	Appellant located the complainant at the Extended Stay Hotel four days before the murder and was able to follow her from her place of employment.

When the State introduced evidence of the text messages between appellant and the complainant reflecting the above topics, appellant objected stating, among other things, the State's notice was not specific enough to give him notice of what the State sought to introduce.

Under rule 404(b), evidence of a "crime, wrong, or other act" is not admissible to prove a person's character. Tex. R. Evid. 404(b)(1). But such evidence may be admissible for another purpose "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Tex. R. Evid. 404(b)(2). The State is required to provide reasonable notice of its intent to introduce such evidence "[o]n timely request by a defendant in a criminal case." *Id*. The purpose of the notice provision of rule 404(b) is to avoid surprise and to allow the defendant to mount an effective defense. *See Hernandez v. State*, 176 S.W.3d 821, 825 (Tex. Crim. App. 2005); *Pena v. State*, 554 S.W.3d 242, 248 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd).

Neither party disputes that appellant timely requested notice and the State timely gave notice. Appellant objected to the specificity of notice. Appellant cited no authority, nor has independent research revealed authority, requiring a certain level of specificity when giving notice pursuant to rule 404(b). Appellant has not shown on this record that he was surprised by the State's notice of intent to introduce the extraneous-offense evidence or that he was unable to mount an effective defense. We therefore overrule appellant's fifth issue. *See Singleton v. State*, 631 S.W.3d 213, 218 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) (concluding trial court did not abuse its discretion because appellant received notice of State's intent and failed to show surprise or inability to mount an effective defense).

22

**III. The trial court did not abuse its discretion in denying appellant's request for a jury instruction pursuant to articles 38.22 and 38.23 of the Code of Criminal Procedure.**

In appellant's fourth issue he asserts the trial court abused its discretion in denying his request for a jury instruction pursuant to articles 38.22 and 38.23 of the Code of Criminal Procedure. At trial, in requesting jury instructions, appellant asserted, "It's a factual dispute as to whether or not the State did what they're supposed to do under 38.22 and 38.23 and reading his warnings before they took his statements." Specifically, appellant asserted the evidence raised a factual dispute as to whether Gamble read appellant his *Miranda* rights before asking appellant for consent to search his phone.

**A. Standard of Review**

When reviewing a claim that the trial court failed to properly charge the jury, we first determine whether error occurred; if error did not occur, our analysis ends. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). If we conclude there was error, there are separate standards of review for determining whether the defendant was harmed by the error. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016).

The purpose of the jury charge is to instruct the jurors on "all of the law that is applicable to the case." *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012). When there is a disputed fact issue that is material to the defendant's claim of a constitutional or statutory violation that would render evidence inadmissible, an exclusionary-rule instruction is required by article 38.23(a). *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007).

**B. Code of Criminal Procedure Article 38.22**

The procedural safeguards of *Miranda* and article 38.22 apply to custodial

23

interrogation by law enforcement officers or their agents. *Berry v. State*, 233 S.W.3d 847, 855 (Tex. Crim. App. 2007). Article 38.22, section 7 requires a trial court to include an instruction in the jury charge when the evidence raises a genuine factual dispute regarding whether a defendant "was adequately warned of his rights and knowingly and intelligently waived" those rights. *Oursbourn v. State*, 259 S.W.3d 159, 176 (Tex. Crim. App. 2008); Tex. Code Crim. Proc. art. 38.22, § 7. In other words, if the defendant made his statement as the result of custodial interrogation, he is entitled—when the issue is raised by the evidence—to have the jury decide whether he was adequately warned of his rights and knowingly and intelligently waived those rights. *Id.*

A statement resulting from custodial interrogation triggers the application of article 38.22. Tex. Code Crim. Proc. art. 38.22 (prescribing when "statements" may be used). The procedural safeguards of article 38.22, including jury instructions on questions of fact, do not apply to this case because consent to search is not an interrogation within the meaning of *Miranda*. *Jones*, 7 S.W.3d at 175 (giving of consent is not a self-incriminating statement). The trial court therefore did not err in refusing appellant's requested instruction pursuant to article 38.22.

### C. Code of Criminal Procedure Article 38.23(a)

Article 38.23(a) of the Code of Criminal Procedure provides as follows:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

24

Tex. Code Crim. Proc. art. 38.23(a).

An instruction under article 38.23(a) is limited to disputed issues of fact that are material to the defendant's claim of a constitutional or statutory violation that would render evidence inadmissible. *Madden*, 242 S.W.3d at 509–10; *see also Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012) ("Where the issue raised by the evidence at trial does not involve controverted facts, but only the proper application of the law to undisputed facts, that issue is properly left to the determination of the trial court."); *Holmes v. State*, 248 S.W.3d 194, 199 (Tex. Crim. App. 2008) ("There is, of course, nothing to instruct the jury about if the suppression question is one of law only, and there is nothing to instruct the jury about unless there is affirmative evidence that raises a contested fact issue.").

A defendant must satisfy three requirements before being entitled to the submission of a jury instruction under article 38.23(a):

(1) The evidence heard by the jury must raise an issue of fact;

(2) The evidence on that fact must be affirmatively contested; and

(3) The contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence.

*Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012); *Madden*, 242 S.W.3d at 510; *see also Robinson*, 377 S.W.3d at 719. When these elements are not met, a trial court is not required to include an article 38.23(a) instruction. *Madden*, 242 S.W.3d at 510.

"To raise a disputed fact issue warranting an article 38.23(a) jury instruction, there must be some affirmative evidence that puts the existence of that fact into question." *Madden*, 242 S.W.3d at 513. Evidence to justify an article 38.23(a) instruction can derive "from any source," no matter whether "strong, weak, contradicted, unimpeached, or unbelievable." *Robinson*, 377 S.W.3d at 719. But it

must, in any event, raise a "factual dispute about how the evidence was obtained." *Id*.

Here, there was no factual dispute about whether Gamble read appellant his *Miranda* warnings the day he asked for consent to search, or whether appellant voluntarily signed the consent form. Both appellant and Gamble testified that Gamble did not read the *Miranda* warnings before asking for consent to search appellant's phone. As stated above, no such warnings were necessary to request consent. Moreover, both appellant and Gamble testified that appellant voluntarily signed the consent form. Although appellant testified he did not read the form before signing it he did not testify that he was coerced or otherwise threatened into signing the form.

While there were conflicting arguments at trial as to whether *Miranda* warnings were required before requesting consent to search, this disagreement was for the trial court to arbitrate, according to the law, not for the jury to determine as if it were an ambiguous or contested question of fact. The question whether appellant was entitled to counsel before consenting to search was therefore a question of law, not fact, and the admissibility of any evidence that was obtained as a result of the cell phone search does not depend on the reasonableness of appellant's belief that he was entitled to counsel before being asked for consent to search. Appellant was not entitled to an article 38.23(a) instruction that the jury must disregard that evidence. We overrule appellant's fourth issue.

## CONCLUSION

Having overruled each of appellant's issues on appeal, we affirm the judgment of conviction.

/s/ Jerry Zimmerer
Jerry Zimmerer
Justice

Panel consists of Justices Jewell, Zimmerer, and Hassan.

Do Not Publish — Tex. R. App. P. 47.2(b).